Michael G. KRUSE, d/b/a Security Mortgage Brokers, Petitioner

v.

Douglas M. McKENNA, Respondent.

No. 06SC555.

Supreme Court of Colorado, En Banc.

March 3, 2008.

Larry Dean Valente, Westminster, Colorado, Attorney for Petitioner.

Law Offices of Andrew L. Quiat, P.C., Andrew L. Quiat, Englewood, Colorado, Sawaya, Rose, Funderburg & Kaplan, P.C., Richard B. Rose, Denver, Colorado, Attorneys for Respondent.

The Demirali Law Firm P.C., A.M. Demirali, Denver, Colorado, Attorney for Amicus Curiae Consumer Crusade, Inc.

Spies, Powers & Robinson, P.C., Jack D. Robinson, Denver, Colorado, Attorney for Amici Curiae Stephen C. Oliver; Stephen Oliver Holdings, Inc., d/b/a Mile High Karate; MHK South University, Inc.; Mile High Karate, LLC and Martial Arts Marketing, LLC.

Faegre & Benson LLP, Brandee L. Caswell, Denver, Colorado, Attorney for Amicus Curiae iHire, Inc.

Justice RICE delivered the Opinion of the Court.

In this case we address whether the plaintiff, Douglas M. McKenna, has standing to assert in Colorado state court an assigned claim for violation of the facsimile transmission provisions of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 (2003). This issue was raised for the first time on appeal to our court. Applying Colorado state law, we find that a claim for liquidated damages under the TCPA is a claim for a penalty which cannot be assigned. Because McKenna only asserts TCPA claims that were purportedly assigned to him, we find he lacks standing to bring his claims.

## I. Facts and Procedural History

In 2003, Douglas M. McKenna filed suit against Michael G. Kruse in Boulder County District Court. McKenna's Complaint alleged that Kruse sent three unsolicited facsimile (fax) advertisements to McKenna's assignor, Harrington Homes, Inc., in 2002 and 2003, in violation of the TCPA. In his C.R.C.P. 26(a)(1) initial disclosures and subsequent pleadings, McKenna clarified that he was seeking the remedies of $500 per violation of the TCPA, and a trebling of that amount for willful violations.

The trial court granted Kruse's motion to dismiss the action for lack of subject matter jurisdiction, ruling that the Colorado Consumer Protection Act (CCPA), sections 6–1–101 to 6–1–1120, C.R.S. (2003), precluded TCPA actions from being brought in Colorado state courts, and therefore deprived the trial court of subject matter jurisdiction. The court of appeals reversed the trial court's dismissal of the action, finding that the interaction of Colorado and federal law allowed parties to sue in state court under the TCPA, the CCPA, or both, and that therefore the trial court had subject matter jurisdiction over McKenna's action.

We initially granted certiorari in this case to review the court of appeals' holding regarding subject matter jurisdiction. After the parties briefed that issue, we granted McKenna's motion for leave to conduct supplemental briefing on the issue of whether McKenna had standing to bring his TCPA claims, given that he was asserting rights purportedly assigned to him by the original recipients of fax transmissions. This supplemental issue had not been addressed by the trial court or court of appeals.

## II. Analysis

■ Congress enacted the TCPA in 1991. In addition to limiting certain telephone solicitations, the TCPA also prohibits sending advertisements to fax machines except under certain conditions, such as when the recipient has an established business relationship with the advertiser. The TCPA provides that persons aggrieved by violations of its terms may:

if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

TCPA § 227(b)(3).

■ The TCPA is silent as to whether claims for violations of its provisions may be assigned so that parties such as McKenna may sue with regard to faxes they did not personally receive. If such claims may not be assigned, then McKenna lacks standing to bring his claims. This is because standing requires an "injury in fact" to a legally-protected right. *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo.2000). Without a valid assignment, McKenna cannot "stand in the shoes" of the party who suffered an alleged injury in fact, and thus cannot claim any injury to his rights. *See Tivoli Ventures, Inc. v. Bumann*, 870 P.2d 1244, 1248 (Colo.1994). McKenna must rely on assignment to obtain standing, given that third-party standing is unavailable to McKenna because the TCPA only vests third-party standing in the state attorney general or other official or agency designated by the state, TCPA § 227(f)(1), and because McKenna does not assert constitutional claims. *See State Bd. for Cmty. Colls. & Occupational Educ. v. Olson*, 687 P.2d 429, 435–36 (Colo. 1984).

■ Though standing was not addressed by the trial court or court of appeals, standing is a jurisdictional issue that may be

raised at any stage of an action, including on appeal. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo.2004); *see Peters v. Smuggler–Durant Mining Corp.*, 910 P.2d 34, 38 (Colo. App.1995), *aff'd on other grounds*, 930 P.2d 575 (Colo.1997). We first address this threshold issue, before we address the merits. *See Ainscough*, 90 P.3d at 855.

As an initial matter, McKenna argues that the issue of standing must be resolved by reference to federal law, to create a uniform interpretation of the federal statute at issue. We are not persuaded by this argument, because the TCPA only allows a private right of action in state courts "if otherwise permitted by the laws or rules of court of [the] State." TCPA § 227(b)(3). We construe this language as a statutory command to apply state substantive law in determining which persons or entities may bring TCPA claims in state court. *Cf. U.S. Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1118 (10th Cir.2007) (applying state substantive law in determining which persons or entities may bring TCPA claims in federal court).

McKenna argues that such a construction would frustrate a federal policy of uniformity in fax solicitation regulation, but the TCPA makes it clear that no such uniformity was intended by Congress. For instance, in addition to providing for the application of state law in determining who can file suit in state court, Congress provided that "nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits ... the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements...." TCPA § 227(e)(1). Such provisions make it clear that Congress contemplated differing state laws in the field of fax solicitation regulation, and differing state laws prescribing who can bring TCPA claims in state court. Accordingly, we apply Colorado law in determining whether an assignee has standing to bring a TCPA claim in Colorado state court.

To determine whether a claim is assignable under Colorado law, we look to whether it survives the death of the person originally entitled to assert the claim. *Micheletti v. Moidel*, 94 Colo. 587, 591, 32 P.2d 266, 267 (1934) ("The general rule is that assignability and descendibility go hand in hand.").[1] The survival of actions is governed by section 13–20–101, C.R.S. (2003), which provides:

> All causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor of or against whom such action has accrued, *but punitive damages shall not be awarded nor penalties adjudged after the death of the person against whom such punitive damages or penalties are claimed* . . . .

(Emphasis added). If the claims of McKenna's assignors are claims for "penalties" that do not survive according to this statute, then those claims could not be validly assigned to McKenna.

Though the TCPA allows aggrieved parties to recover their actual monetary loss, TCPA § 227(b)(3), McKenna only seeks an award of $500 for each fax transmission, plus a trebling of that amount for willful violations. McKenna does not seek compensation for actual monetary loss, nor does he plead that his assignor suffered any actual monetary loss. Therefore, we must assess whether McKenna's statutory claims for liquidated and treble damages constitute "penalties" such that they do not survive, and are therefore non-assignable.

McKenna argues that if we apply state law to determine whether a statute imposes a penalty—as we do—we should apply the analysis set forth in our decision in *Credit Men's Adjustment Co. v. Vickery*, 62 Colo. 214, 161 P. 297 (1916). In that case, we found that a now-repealed statute was penal because it made the officers and directors of a corporation personally liable for corporate debts upon a failure to file an annual report. *Id.* at 217, 161 P. at 298. However, we held the statute was remedial (rather than penal) in providing a remedy to the corporation's

---

1. *Cf. Matson v. White*, 122 Colo. 79, 84, 220 P.2d 864, 866 (1950) (indicating, without analysis of survivability, that contracts involving matters of personal trust or confidence, or for personal services, are not assignable).

creditors; the latter determination controlled. *Id.; see Bergren v. Valentine Hardware Co.*, 88 Colo. 52, 57, 291 P. 1038, 1040 (1930) (applying *Vickery's* analysis); *Perini v. Cont'l Oil Co.*, 68 Colo. 564, 566, 190 P. 532, 533 (1920) (same); *Interstate Savings & Trust Co. v. Wyatt*, 63 Colo. 1, 4, 164 P. 506, 507 (1917) (same).

■ However, in the years since we decided *Vickery* we have developed a fuller, more nuanced test for determining whether a statutory claim is one for a penalty, in the context of determining the correct statute of limitation to apply. In this modern test we look to whether (1) the statute asserted a new and distinct cause of action; (2) the claim would allow recovery without proof of actual damages; and (3) the claim would allow an award in excess of actual damages.[2] *See Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 214 (Colo.1984); *Carlson v. McCoy*, 193 Colo. 391, 393–94, 566 P.2d 1073, 1075 (1977). A statutory claim may be found to be a "penalty" under this test even if it results in a damage award to an individual, rather than the state; this is because the damage award is serving the public interest in deterring or punishing the conduct at issue. *Carlson*, 193 Colo. at 394, 566 P.2d at 1075.

Today we apply this modern test to determine whether a statutory claim is a claim for a "penalty" as that term is used in our survival statute, section 13–20–101. We decline to adopt the test used in *Vickery*, and we overrule *Vickery* and the cases applying it to the extent they purport to set forth a test that differs from the one set forth in *Carlson* and *Palmer*.

Under the *Carlson/Palmer* test, McKenna's statutory claim for $500 in liquidated damages per fax transmission is a claim for a penalty. First, McKenna's claim arises under the TCPA, which created a new and distinct cause of action for sending unsolicited faxes. Second, if he prevailed, McKenna would recover at least $500—and as much as $1,500—per fax transmission without proving any actual damages. This brings us to the third prong of our test: while McKenna may argue that every unsolicited fax transmission necessarily causes damages in the loss of toner and paper, those damages would normally be de minimus. Should he prevail and recover at least $500 per fax transmission, McKenna would recover much more than the actual damages caused by each fax. An award of $500 would always exceed actual damages in terms of paper and toner used. Though McKenna argues that unsolicited faxes also damage the recipient by tying up his or her fax machine and disrupting business, this is not always the case—the TCPA's fax provisions are not limited to businesses, and in any event not every unsolicited fax to a business will disrupt that business. Even where an unsolicited fax to a business does cause an interruption, there has been no showing that such damages could consistently approach $500 per fax.[3]

For these reasons, we find that a claim under the TCPA for $500 in liquidated damages per violation is a penalty that cannot be assigned. *See Carlson*, 193 Colo. at 394, 566 P.2d at 1075 (holding that a statute providing for treble actual damages is penal); *Atchison, Topeka & Santa Fe R.R. Co. v. Tanner*, 19 Colo. 559, 562–63, 36 P. 541, 542–43 (1894) (holding that a statute allowing recovery of twice the value of each animal killed is penal); *U.S. Fax Law Ctr., Inc. v. T2 Techs., Inc.*, No. 06CA0432, slip op. at 11–15, —— P.3d ——, ——————, 2007 WL 4336232 (Colo.App. Dec.13, 2007) (selected for official publication) (holding that a TCPA claim for liquidated damages is a penalty under Colorado law); *U.S. Fax Law Ctr., Inc. v. Data Design Specialists, Inc.*, No. s06CA0433, slip op. at 2 (Colo.App. Dec. 20, 2007) (not selected for official publication) (same); *U.S. Fax Law Ctr., Inc. v. iHire, Inc.*, 362 F.Supp.2d 1248, 1253 (D.Colo.2005), *aff'd*, 476 F.3d 1112

---

2. It should be noted that this test is only used to determine whether a statute imposes a penalty. We use a different test to determine whether a contractual liquidated damages clause imposes a penalty. *See Rohauer v. Little*, 736 P.2d 403, 410 (Colo.1987).

3. McKenna asks us to take judicial notice of his submission to the Federal Communications Commission regarding the alleged interruption unsolicited faxes inflict upon his business. This untested, disputable declaration serving McKenna's own interests is not a proper subject of judicial notice. *See* CRE 201.

(10th Cir.2007) (same). For the same reasons, a claim for treble the amount of those liquidated damages is also a penalty that cannot be assigned.

Because McKenna purports to assert by assignment an unassignable claim for a penalty, we find that McKenna lacks standing. Because of this holding, we need not address Kruse's alternative argument that McKenna's claim is unassignable because it is a privacy tort amounting to a "tort action[ ] based upon personal injury" per our survival statute, section 13–20–101. *Cf. iHire,* 476 F.3d at 1119–20 (holding that a TCPA claim is an unassignable personal claim); *U.S. Fax Law Ctr., Inc. v. Myron Corp.,* 159 P.3d 745, 746 (Colo.App.2006), *cert. denied,* 2007 WL 1181623 (Colo. Apr.23, 2007) (same); *McKenna v. Oliver,* 159 P.3d 697, 699–700 (Colo. App.2006), *cert. denied,* 2007 WL 1181630 (Colo. Apr.23, 2007) (same); *USA Tax Law Ctr., Inc. v. MBA Fin. Group, Inc.,* No. 05CA1671, slip op. at 5–8, 2007 WL 114505 * 1 (Colo.App. Jan.18, 2007), *cert. denied,* 2007 WL 1181616 (Colo. Apr.23, 2007) (not selected for official publication) (same); *Consumer Crusade, Inc. v. MBA Fin. Group, Inc.,* No. 04CA2366, slip op. at 4–5, 2006 WL 2773259 * 1 (Colo.App. Sept.28, 2006), *cert. denied,* 2007 WL 1181619 (Colo. Apr.23, 2007) (not selected for official publication) (same). Likewise, because we find that McKenna lacks standing, we need not address the issue of whether Colorado courts have subject matter jurisdiction over TCPA claims given the interaction of federal and state law at the time McKenna's assignors' claims arose.

### III. Conclusion

We conclude that McKenna lacks standing to assert his claims under the TCPA, because he obtained them through void assignments. We therefore reverse the court of appeals, and remand for reinstatement of the trial court's dismissal of the action with prejudice.